**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                               )
**DEBORAH A. BUTLER,**                         )
                                               )          **CIVIL ACTION**
                  **Plaintiff,**               )
                                               )          **NO. 4:15-CV-13478-TSH**
         **v.**                                )
                                               )
**ADECCO USA INC., SUN LIFE**                  )
**FINANCIAL (U.S.) SERVICES**                  )
**COMPANY INC., and DIANE M.**                 )
**BASSETT,**                                   )
                                               )
                  **Defendants.**              )
_____ )

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS**
**(Docket Nos. 33 and 35)**

**May 24, 2016**

Deborah Butler brought this employment discrimination action against Adecco USA, Inc.

(Adecco), Sun Life Financial (U.S.) Services Company, Inc. (Sun Life), and Diane Bassett after

she was terminated from a temporary employment position, allegedly because of her age and race.

All Defendants move to dismiss.  I find that Plaintiff has alleged plausible claims of discrimination

but has failed to allege a plausible claim of defamation.  For the reasons set forth below, Bassett

and Sun Life's motion to dismiss (Docket No. 33) is **_granted_** in part and **_denied_** in part.  Adecco's

motion to dismiss (Docket No. 35) is **_denied_**.

**Background**

The following facts are taken from Plaintiff's amended complaint (the complaint) and

assumed true for the purposes of this motion.  Deborah Butler (Plaintiff) is an African-American

female of Native American Indian descent, who is at least forty years old.  She holds two law

degrees, has passed the Pennsylvania bar examination, and holds a GE Six Sigma Quality Control

Green Belt certification.   In 2000, Plaintiff registered with Adecco, which is a temporary employment agency.   Between 2008 and June of 2012, Adecco assigned Butler periodic temporary job assignments with various employers in the Massachusetts area.   One of these assignments was with Sun Life in 2009.

Plaintiff was given another assignment with Sun Life in 2012.   On or about August 20, 2012, Adecco employee Matthew Clayman emailed Butler to confirm a two-month "Underwriting Administrative" assignment.   Plaintiff reported to the job assignment, where she was joined by five other temporary staff members.   She was immediately separated from these other staff members and assigned to Diane Bassett, who was Sun Life's Senior Manager of Stop Loss Underwriting.   Cassandra Callow, who was a nineteen-year-old Sun Life employee, began to train Butler.   Butler considered Callow's training to be substandard.   Among other problems, many of Butler's questions went unanswered.   Callow also told Butler that she and Bassett were friends and that they carpooled to work.   During her four days of training, Butler took initiative and drafted a decision tree detailing the steps to completing her tasks as part of the "Renewal Team."   She left the decision tree on her desk on the evening of Thursday, August 30, 2012.

That evening, she received a call from Clayman, instructing her not to return to her assignment at Sun Life.   Also on August 30, 2012, Bassett sent an email to Clayman, with another Sun Life employee, James Moriarty, cc'ed.   This email contained Bassett's statement that "it is too time consuming to train her [Butler] for this process." (Docket No. 34-1 at 1.)   The process was the "renewal process," which was Butler's assignment, and which Butler describes in the complaint as "entering data relating to Sun Life customers." (Docket No. 25 at ¶ 18.)   Clayman emailed Butler apologizing for the news that she had been terminated, stating "we will find something new to transition you into." (Docket No. 25 at ¶ 20.)   No such assignment at Sun Life

has occurred.  Butler alleges that, because of Bassett's email, she was unable to secure any subsequent temporary assignments from Adecco until May of 2013.

On June 24, 2013, Butler filed an administrative complaint in a dual filing with the Massachusetts Commission Against Discrimination (MCAD) and the Equal Employment Opportunity Commission (EEOC), asserting discrimination based on age and race.[1]  On August 21, 2015, Butler received a Dismissal and Notice of Appeal letter from the MCAD, stating that the "Investigation reveals that Sun Life replaced Complainant with Mr. Drop, a current temp who had been fully trained and working for Sun Life for a month prior to Complainant's hire." (Docket No. 25 at ¶ 30.)  This MCAD letter also stated that "Adecco continues to give complainant temporary assignments." (Docket No. 25 at ¶ 31.)  However, Butler alleges that she has not received a work assignment from Adecco since March 30, 2014.  Butler pursued an appeal of the MCAD's initial determination, but the appeal was later dismissed because she brought the instant suit during its pendency.

Butler initiated this lawsuit, *pro se*, in state court on August 28, 2015.  The case was removed to this Court, and she filed her amended complaint on November 18, 2015.  The complaint contains the following counts: race discrimination in violation of Mass. Gen. Laws ch. 151B (count I); age discrimination in violation of Mass. Gen. Laws ch. 151B (count II); race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000c *et seq.* (count III); age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 (count IV); and defamation (count V).  Butler seeks compensatory and punitive

---

[1] In her complaint, Butler quotes extensively from the position statements submitted during the MCAD proceedings.  Sun Life and Bassett have submitted a copy of Bassett's affidavit that was filed with a rebuttal statement.  These documents, showing the arguments that the parties presented to the MCAD, do not bear on the present motion to dismiss.

damages.  All defendants have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  Sun Life and Bassett filed a joint motion, and Adecco filed separately.

### Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible

entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 559 (2007). Although detailed

factual allegations are not necessary to survive a motion to dismiss, the standard "requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Id.* at 555. In evaluating a motion to dismiss, the court must accept all factual allegations in

the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v.*

*American Airlines, Inc.,* 199 F.3d 68, 68 (1st Cir. 2000). In addition to the complaint, the court

may consider "documents the authenticity of which are not disputed by the parties; . . . documents

central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint." *Curran v.*

*Cousins,* 509 F.3d 36, 44 (1st Cir. 2007) (quoting *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993)).

It is a "context-specific task" to determine "whether a complaint states a plausible claim

for relief," one that "requires the reviewing court to draw on its judicial experience and common

sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citations omitted).  "[W]here the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting

Fed. R. Civ. P. 8(a)(2)).  On the other hand, a court may not disregard properly pled factual

allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable."

*Twombly*, 550 U.S. at 556.  When a plaintiff is proceeding *pro se*, the plaintiff's complaint and

other filings are "liberally construed." *Erikson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam)

(citation omitted) ("a *pro se* complaint, however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers"). "However, pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt,* 118 F.3d 886, 890 (1st Cir. 1997).

## **Discussion**

A. *Failure to Exhaust Administrative Remedies under Title VII*

All three Defendants argue that Plaintiff has failed to exhaust her administrative remedies as required by Title VII of the Civil Rights Act of 1964 (Title VII).[2]   Under Title VII, an aggrieved individual is not permitted to bring suit in federal court until he or she receives a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1).  In her initial filings, Plaintiff did not include this letter or allege that she had received one.  However, she has since submitted a letter from the EEOC, giving her notice that the EEOC has terminated the proceedings and that she may bring a civil lawsuit.  Thus, I find that she has properly exhausted her administrative remedies.

B. *Discrimination Based on Race and Age*

As a threshold matter, Bassett argues that Plaintiff's federal discrimination claims cannot be maintained against her because these statutes do not apply to individual employee defendants. Bassett is correct. *See Fantini v. Salem State Coll.*, 557 F.3d 22, 30 (1st Cir. 2009) (Title VII); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510-11 (4th Cir. 1994) (ADEA).  Accordingly, counts III and IV are dismissed as to Bassett.

All three Defendants argue that Plaintiff has failed to state plausible claims for race- and age-based discrimination.  Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

---

[2] Defendants also argued that she had failed to exhaust her administrative remedies under state law.  Defendants withdrew this argument after the MCAD dismissed Plaintiff's appeal in February of 2016.

compensation, terms, conditions, or privileges of employment, because of such individual's race

[or] color." 42 U.S.C. § 2000e-2(a)(1).   Likewise, Chapter 151B makes it unlawful for an

employer, "because of the race [or] color . . . of any individual to refuse to hire or employ or to bar

or to discharge from employment such individual or to discriminate against such individual in

compensation or in terms, conditions or privileges of employment, unless based upon a bona fide

occupational qualification." Mass. Gen. Laws ch. 151B, § 4(1).   In the age context, the ADEA

makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or

otherwise discriminate against any individual with respect to his compensation, terms, conditions,

or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).   Chapter

151B makes it unlawful for an employer, "because of the age of any individual, to refuse to hire

or employ or to bar or to discharge from employment such individual, or to discriminate against

such individual in compensation or in terms, conditions or privileges of employment, unless based

upon a bona fide occupational qualification." Mass. Gen. Laws ch. 151B, § 4(1B).

This Court uses the burden-shifting framework established in *McDonnell Douglas Corp.*

*v. Green,* 411 U.S. 792, 802–805 (1973), to analyze claims of employment discrimination.   This

framework applies to both state and federal claims. *See Sisco v. DLA Piper LLP*, 833 F. Supp. 2d

133, 148 (D. Mass. 2011); *McKenzie v. Brigham & Women's Hosp.*, 541 N.E.2d 325, 327 (Mass.

1989).   It applies to claims for racial discrimination under Title VII, as well as age-based

discrimination under the ADEA. *Cham v. Station Operators, Inc.*, 685 F.3d 87, 93 (1st Cir. 2012)

(Title VII); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1015 (1st Cir. 1979) (ADEA).   Under this

framework, the plaintiff bears the initial burden of establishing a prima facie case of

discrimination. Once established, this "creates a presumption that the employer unlawfully

discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)

(quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  "Generally, a plaintiff establishes a prima facie case by showing that (1) [she] is a member of a protected class; (2) [she] was qualified for the job; (3) the employer took an adverse employment action against [her]; and (4) the position remained open or was filled by a person with similar qualifications." *Cham*, 685 F.3d at 93 (quoting *Kosereis v. Rhode Island,* 331 F.3d 207, 212–13 (1st Cir. 2003)).[3]

Defendants do not acknowledge the *McDonnell Douglas* framework, nor do they mention the requirements of the prima facie case.  Instead, they argue that Plaintiff's complaint does not contain facts to suggest race- or age-based discrimination because, apart from stating that she is of African-American and Native American lineage and over forty years old, she makes no mention of race or age.  This argument overlooks the well-established burden-shifting framework that governs employment discrimination cases, which is designed for situations in which a plaintiff lacks direct evidence of discrimination.[4]

---

[3] After the plaintiff establishes her prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *McDonnell Douglas,* 411 U.S. at 802.  If the employer is able to produce such a reason, the presumption created by the prima facie case is rebutted, and the plaintiff must establish that the stated reason is merely pretext for discrimination. *Hicks*, 509 U.S. at 507-08. At the motion-to-dismiss stage, the plaintiff needs to establish only a prima facie case. *See Sisco*, 833 F. Supp. 2d at 148.

[4] The *McDonnell Douglas* framework "addresses two problems that exist in most employment discrimination cases: (1) direct evidence of discrimination is likely to be unavailable, and (2) the employer has the best access to the reasons that prompted him to fire, reject, discipline or refuse to promote the complainant." *Loeb*, 600 F.2d at 1014.  "To offset, to some degree, these difficulties, McDonnell Douglas affirms the right of a complainant to make a prima facie showing of discrimination by establishing that [her] rejection did not result from 'the two most common legitimate reasons,'" which are "lack of qualifications" and the "absence of a job opening." *Id.* (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977)).  "Proof of the McDonnell Douglas -type prima facie case assures the plaintiff [her] day in court despite the unavailability of direct evidence, and entitles [her] to an explanation from the defendant-employer for whatever action was taken." *Id.*

Plaintiff has satisfied the first and third elements of the prima facie case by stating that she

is of African-American and Native American lineage and is over forty,[5] and that Sun Life and

Adecco took an adverse action against her by terminating her position.   The second and fourth

elements present closer questions but also weigh against dismissal.   In support of her qualifications

for the underwriting administrative assignment, Plaintiff alleges that: Sun Life had previously

engaged her for a temporary assignment in 2009; during her four-day training period in 2012, she

took the initiative to draft a decision tree detailing the steps for completing her tasks; she holds

two law degrees; she has passed the Pennsylvania bar examination; and she holds a GE Six Sigma

Quality Control Green Belt certification. The details of the assignment and its requisite duties are

not entirely clear, described as "entering data relating to Sun Life customers." (Docket No. 25 at

¶ 18.)   Plaintiff alleges that she was replaced by another temporary employee who had been

working with Sun Life for one month.

Considering that Plaintiff's *pro se* filings should be liberally construed, I find that the

factual allegations in her complaint state a plausible claim that she was a member of a protected

class; that she was qualified for the Sun Life position; that she was terminated; and that she was

replaced by someone with similar qualifications.   Sun Life's and Adecco's motions to dismiss are

denied with regard to counts I-IV.

###### C. *Defamation*

This claim is against Bassett only.   Bassett argues that Plaintiff has failed to allege a

defamatory statement of fact.   The statement at issue is contained in the email that Bassett sent to

Moriarty and Clayman: "Please let Deb Butler know that we will not need her services, and her

---

[5] The ADEA protects individuals who are at least forty years old. 29 U.S.C. § 631(a).

last day will be today. We have made a decision to pull someone from my team to assist in the renewal process, as it is too time consuming to train her for this process." (Docket No. 34-1 at 1.)

"To prevail on a claim of defamation, a plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." *White v. Blue Cross & Blue Shield of Massachusetts, Inc.*, 809 N.E.2d 1034, 1036 (Mass. 2004). "[T]o be actionable, the statement must be one of fact rather than of opinion." *Scholz v. Delp*, 41 N.E.3d 38, 45 (Mass. 2015). Although "[a] statement of fact is not shielded from an action for defamation by being prefaced with the words 'in my opinion,' . . . a statement that does not contain objectively verifiable facts is not actionable." *Id.* (internal citations omitted). Moreover, a statement of opinion can be actionable if the "opinion 'implies the allegation of undisclosed defamatory facts as'" as its basis. *Yohe v. Nugent*, 321 F.3d 35, 41 (1st Cir. 2003) (quoting *Nat'l Ass'n of Gov't Employees, Inc. v. Central Broad. Corp.,* 396 N.E.2d 996, 1000-01 (Mass. 1979)). "To determine whether or not a statement is an opinion, a court 'must examine the statement in its totality and in the context in which it was uttered or published,'" giving "'weight to cautionary terms used by the person publishing the statement,'" and considering "'all of the circumstances surrounding the statement.'" *Id.* (quoting *Lyons v. Globe Newspaper Co.,* 612 N.E.2d 1158, 1162 (Mass. 1993)) (citation omitted).

Bassett's statement was one of opinion, not fact. The statement reflected her opinion that the investment of time required to train Plaintiff was not warranted under the circumstances. Moreover, even if the statement were construed as fact, it would be protected by a conditional privilege. Employers are privileged to "disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the

fitness of an employee to perform his or her job." *White*, 809 N.E.2d at 1038 (quoting *Bratt v. International Business Machs. Corp.,* 467 N.E.2d 126, 129 (Mass. 1984)). This privilege promotes "the free flow of information in the workplace." *Id.* (quoting *Bratt,* 467 N.E.2d at 129, 132 n.11). The privilege generally applies when "the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it," such as when an employer discloses the reasons for terminating an employee. *Sheehan v. Tobin,* 93 N.E.2d 524, 528 (Mass. 1950) (citations omitted). The "privilege is lost if the defendant (1) knew the information was false, (2) had no reason to believe it to be true, or (3) recklessly published the information unnecessarily, unreasonably, or excessively." *Sklar v. Beth Israel Deaconess Med. Ctr.,* 797 N.E.2d 381, 388 (Mass. App. Ct. 2003).

Bassett's statement was reasonably necessary to advise Clayman and Moriarty of the change in staffing; and there are no facts to suggest that her publication was reckless or unnecessary, or that she knew or had reason to believe that the information was false. Accordingly, Bassett's motion is granted with regard to count V.

### D. *Timing of Motions to Dismiss*

In response to the motions, Butler argues that they are untimely because they were filed more than twenty-one days after receipt of the summons and complaint. However, Defendants moved on November 30, 2015 for an extension of time to respond to Plaintiff's complaint. (Docket No. 29.) Plaintiff assented to this motion, and it was granted on December 1, 2015, giving Defendants until December 18, 2015 to file. (Docket No. 30.) Defendants' motions were filed on December 18, 2015 and are, therefore, timely.

## Conclusion

For the reasons set forth above, Bassett and Sun Life's motion to dismiss (Docket No. 33) is ***granted*** in part and ***denied*** in part.  Adecco's motion to dismiss (Docket No. 35) is ***denied***. Counts I and II remain against Bassett, Sun Life, and Adecco.  Counts III and IV remain against Sun Life and Adecco.  Count V is dismissed it its entirety.

**SO ORDERED.**

> /s/ *Timothy S. Hillman*
> **TIMOTHY S. HILLMAN**
> **DISTRICT JUDGE**